UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Muhammad J.D. Akbar,** | Civil No. 05-2632 (DSD/SRN) |
| Petitioner, | |
| v. | <u>**REPORT & RECOMMENDATION**</u> |
| **Marty Anderson, Warden,** | |
| Respondent. | |

---

Muhammad J.D. Akbar, Federal Medical Center - Rochester, P.O. Box 4000, Rochester, Minnesota, 55903-4000, Petitioner, <u>pro se</u>; and Scott F. Tilsen, Federal Defender, 107 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Petitioner.

Michael L. Cheever, Assistant United States Attorney General, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Muhammad J.D. Akbar for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently incarcerated pursuant to a 1982 conviction for hijacking an aircraft. Petitioner claims that he is being confined at the Federal Medical Center, Rochester, Minnesota, in violation of federal law and the Constitution. He contends that he has been wrongfully denied release on parole and detained without a hearing, in violation of due process, beyond his previously-granted parole date. Respondent contends that Petitioner is not entitled to any relief in this matter because any issue of a requisite hearing is now moot.

The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that this action be dismissed with prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On April 12, 1982, Petitioner was sentenced to 50 years in prison for hijacking an aircraft by use of force. (Respondent's Return, Exhibit A.) At his initial parole hearing in October 1991, Petitioner admitted he suffered from a mental illness at the time of the offense. (Id., Ex. B.) On January 16, 1992, the United States Parole Commission granted Petitioner a parole date of December 17, 1998. (Id., Ex. C.) A series of disciplinary infractions, psychological evaluations and lack of proper post-release mental health facilities have resulted in numerous changes, however, to his originally-scheduled parole date.

At first his parole date had been advanced to December 7, 1996. (Id., Ex. D.) But on November 19, 1996, the Commission rescinded his presumptive parole date by 24 months due to an assault on another prisoner. (Id.) The Commission reopened his case in July 1998 and ordered a special reconsideration hearing due to a negative psychiatric report. (Id., Ex. E.) On November 20, 1998, the Commission rescinded Petitioner's parole date by 36 months and granted him a parole date of December 7, 2001, based on the conclusion that he presented a more serious risk than his salient factor score indicated. (Id., Ex. F.)

On May 22, 2002, the Commission again rescinded Petitioner's parole by 24 months due to 12 disciplinary infractions, thereby granting him a presumptive parole date of December 7, 2003. (Id., Ex. G.) On April 30, 2003, the Commission rescinded that parole date for 30 days, however, due to another disciplinary infraction. (Id., Ex. H.)

On December 18, 2003, the Commission reopened Petitioner's case based on several psychological reports, rescinded his parole date of January 6, 2004, and ordered a special reconsideration hearing. (Id., Ex. I.) On March 8, 2004, a Commission hearing examiner

conducted that hearing, at which Bureau of Prisons ("BOP") staff recommended release to an in-patient mental health treatment facility.  (Id., Ex. J.)  On March 15, 2004, the Commission deferred any decision on Petitioner's parole date for up to 120 days to allow the BOP to transfer Petitioner, pursuant to the BOP staff recommendation, to the West Coast, so that the BOP could arrange a suitable release plan that included mental health supervision.  (Id., Ex. K.)

The Probation Office was unable to arrange for a release plan that included the Commission's requirements.  (Id., Ex. L.)  Accordingly, on July 20, 2004, the Commission amended the March 15, 2004, notice of action and rescinded Petitioner's parole date until an acceptable release plan could be developed, including initial placement in a secure mental health treatment facility.  (Id., Ex. M.)

On July 26, 2004, after Petitioner had been transferred to a Federal Corrections Institution in California, the California Probation Office informed the Commission that it was unable to find an appropriate local facility.  (Id., Ex. N.)  On November 4, 2004, the Commission reopened Petitioner's case to schedule a hearing to determine whether release would be appropriate without direct placement in a secure mental health facility.  (Id., Ex. O.)  Only after Petitioner filed the present habeas action in November 2005, however, did the Commission discover that the hearing had not yet been conducted.  Thus, after a delay of approximately one year, the hearing was eventually scheduled for December 20, 2005.  (Id., Ex. U.)

On March 8, 2005, however, Petitioner assaulted another inmate.  (Id., Ex. P.)  On March 31, 2005, Petitioner was transferred to the Federal Medical Center in Rochester, Minnesota for a mental health evaluation.  (Id., Ex. Q.)  On June 17, 2005, Petitioner received an incident report for threatening bodily harm and insolence.  (Id., Ex. S.)  The BOP found after each incident that

Petitioner was not competent to understand the disciplinary proceedings. (Id., Exs. R, T.) The BOP also concluded that he was not likely to become competent in the foreseeable future. (Id., Ex. T.)

On December 14, 2005, the Commission amended its November 4, 2004, decision in order to consider a new disciplinary hearing report and the March 8 and June 17 incident reports. (Id., Ex. V.) On December 20, 2005, after the briefing in this matter was completed, the scheduled hearing was in fact conducted. (Letter from Scott F. Tilsen, October 11, 2006.) On February 14, 2006, the Commission rescinded Petitioner's January 6, 2004, parole date and ordered him to serve an additional 83 months. (Id.)

In the interim, however, on November 14, 2005, Petitioner filed the present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.

**II.    DISCUSSION**

Petitioner seeks release or at least a hearing on parole rescission. Petitioner apparently first claims that his present detention at the Federal Medical Center is unlawful because, as he understands the record, the Commission had ordered him released within 120 days of March 15, 2004. (Pet. at 1-2.) Petitioner thus claims the rights accorded a parolee, contending that he is continuing to be held–without a hearing–despite having been paroled. (Id. at 2 (citing Morrissey v. Brewer, 408 U.S. 471 (1972) (delineating due process requirements for parole revocation hearings)). But see id. at 4 (recognizing that he was never "actually released from custody," but still seeking protections afforded a parolee).)

Petitioner apparently misunderstands the posture of his incarceration and the ongoing parole determinations. Petitioner has not been paroled and thus there is no issue of wrongful

4

detention following parole or of the procedural rights incident to parole revocation. Although a parole date of January 6, 2004, had been granted, the Commission rescinded that date on December 18, 2003. After conducting a special reconsideration hearing, the Commission decided on March 15, 2004, to defer any decision on a new parole date for up to 120 days in order to provide time to arrange a suitable release plan.

Because the Probation Office was unable to make the requisite arrangements, the Commission amended the March 15, 2004, notice of action on July 20, 2004, rescinding Petitioner's parole date until development of a release plan that including placement in a secure mental health treatment facility. In sum, at the time Petitioner filed for habeas relief in November 2005, no parole date had been granted and, accordingly, he has not been held unlawfully past any such parole date.

As the United States Supreme Court has clarified, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," and there is a "crucial distinction" between "parole *release* and parole *revocation*." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 9 (1979) (emphases in original). Accordingly, the due process requirements articulated in Morrissey v. Brewer, 408 U.S. 471 (1982), which concern parole revocation, do not govern here. Greenholtz, 442 U.S. at 9. But this is not to say that a prisoner is never entitled to any procedural due process protections. Evans v. Dillahunty, 662 F.2d 522, 526 (8th Cir. 1981) (concluding that federal parole statute creates a substantial expectancy of parole, but declining to "discuss in detail . . . what process is due in connection with the federal parole process").

Petitioner's only valid argument is that his parole proceedings have been unlawfully

delayed because a timely hearing was not conducted. On November 4, 2004, the Commission ordered Petitioner's case reopened for scheduling of a special reconsideration hearing. No date for that hearing, however, was specified at that time.

The Court notes that the Commission failed to conduct within the prescribed time period the special reconsideration hearing it had ordered on November 4, 2004. See 28 C.F.R. § 2.28(e) (providing that upon reopening and reconsideration of case prior to release, Commissioner may "retard an effective parole date for purposes of release planning," but that "[r]etardation without a hearing may not exceed 120 days"). And it is not clear from the record why no hearing was timely scheduled or conducted.

But the proper remedy for any such delay is not to order release pursuant to a writ of habeas corpus. Burton v. Ciccone, 484 F.2d 1322, 1323 (8th Cir. 1973). Any delay in scheduling or conducting that hearing would not warrant release, at least absent a showing of unreasonableness and resulting prejudice. United States v. Miller, 599 F.2d 249, 251 (8th Cir. 1979) (per curiam) (addressing 120 day period for conducting initial hearing under 28 C.F.R. § 2.12). No such showing of prejudice has been made here.

Rather, the sole judicial remedy would be an order to conduct the hearing. Burton, 484 F.2d at 1323; DeShields v. United States Parole Commission, 593 F.2d 354, 355 (8th Cir. 1979). "When an inmate has not been afforded a timely hearing, the proper course is to grant him a hearing at the earliest possible date." Miller, 599 F.2d at 251.

Here, however, the hearing had been scheduled–albeit belatedly–for December 20, 2005, just after the briefing in this matter was completed. And that hearing has in fact occurred. Therefore, any issue of a writ of mandamus directing the Commission to conduct that hearing is

6

now moot. Berg v. United States Parole Commission, 735 F.2d 378, 379 n.3 (9th Cir. 1984) (concluding that once required hearing was held, any entitlement to writ of mandamus directing hearing to be held was moot); see DeShields, 593 F.2d at 356 (holding that issue of failure to timely conduct parole hearing becomes moot upon reversal of parole examiners' denial of parole).

To the extent that Petitioner claims that the Commission violated his rights by denying him parole, the Court notes that the Commission possesses the discretion to grant or deny parole and that this Court may not review the Commission's substantive decision resulting from the exercise of that discretion. Jones v. United States Bureau of Prisons, 903 F.2d 1178, 1185 (8th Cir. 1990) (holding that courts "have no jurisdiction to review the substantive decision of the Commission to grant or deny parole," and have jurisdiction only "to review the Commissions's decision-making process to determine whether the Commission exceeded the scope of its authority granted by Congress").

**III.   CONCLUSION**

Generally, the proper remedy for failure to conduct a parole rescission hearing on a timely basis is not release, but an order to conduct that hearing. Here, after some delay, a hearing was scheduled for December 20, 2005, and did in fact occur after briefing was completed in this matter. Accordingly, the issue is now moot. Finally, this Court lacks jurisdiction to review the substantive result of that hearing.

**IV.   RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

7

    1.  Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket No. 1), be DENIED; and

    2.  This action be DISMISSED WITH PREJUDICE.

Dated: October 16, 2006

                                                              s/ Susan Richard Nelson

                                                  SUSAN RICHARD NELSON
                                                  United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by October 31, 2006, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.